**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Case No. 8:19-cv-3459-PWG** |
| **ELFIDIO CASTILLO,** | * | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff, the United States of America, brought this denaturalization action on December 3, 2019 against Defendant Elfidio Castillo,[1] to revoke his naturalized U.S. citizenship under 8 U.S.C. § 1451(a). Compl., ECF No. 1. This action is based on Defendant's criminal sexual activity with a minor before he became a naturalized citizen of the United States, but for which he was not convicted until after he naturalized as a U.S. citizen. Plaintiff seeks to revoke and set aside the order admitting Defendant to U.S. citizenship and to cancel his certificate of naturalization on the ground that Defendant illegally procured his naturalization because, prior to his naturalization, he committed unlawful acts that adversely reflected on his moral character under 8 C.F.R. § 316.10(b)(3)(iii), and statutorily disqualified him from naturalization. Plaintiff also claims that Defendant failed to meet the statutory good moral character requirement because Defendant concealed and willfully misrepresented material facts during his naturalization proceedings about his commission of that criminal sexual conduct.

---

[1] Also referred to as Elfido Castillo. *See, e.g.*, N-400 Application for Naturalization, Compl. Ex. E, ECF No. 1-5.

On July 20, 2020, Plaintiff moved for judgment on the pleadings on Count II of its Complaint pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., ECF No. 23. Plaintiff alleges that Castillo's unlawful actions during the statutory good moral character period [2] constitute the essential elements of: (i) perjury, in violation of 18 U.S.C. § 1621(1); (ii) false swearing in an immigration matter, in violation of 18 U.S.C. § 1546(a); and (iii) making false material statements, in violation of 18 U.S.C. § 1001(a). *Id.* at 2. Plaintiff claims that because these all adversely reflected on his moral character, and there are no plausible extenuating circumstances that lessen his guilt for the unlawful activity, Castillo is ineligible to naturalize, and thus his procurement of naturalization is illegal. *Id.* (citing 8 U.S.C. § 1101(f); 8 C.F.R. § 316.10(b)(3)(iii)).

After reviewing the record, the Court concludes that the government has not met its burden for judgment on the pleadings. Because the pleadings do not clearly, unequivocally, and convincingly establish the absence of genuine issues of material facts and extenuating circumstances, the government has not shown that it is clearly entitled to judgment as a matter of law that Castillo would have been ineligible for naturalization due to unlawful acts adversely reflecting on his moral character. Accordingly, the government is not entitled to judgment on the pleadings with respect to Count 2 of the complaint.

## BACKGROUND

Defendant Elfidio Castillo entered the United States at an unknown date and time without being admitted or paroled. Compl. ¶ 4, ECF No. 1. He became a lawful permanent resident of the United States on November 8, 1989. *Id.* at ¶ 5. On March 30, 2009, Castillo filed a Form N-400,

---

[2]     The required statutory period for good moral character begins five years before the date the applicant files the application for naturalization, and continues until the oath of allegiance is taken. Compl.¶ 35 (citing 8 U.S.C.§ 1427(a); 8 C.F.R. § 316.10(a)(1)).

Application for Naturalization, with USCIS. *See* Compl., Ex. E, at 2. On June 10, 2009, while Castillo was in the process of obtaining his naturalization, he was arrested and then charged by the State's Attorney for Montgomery County, Maryland with seven criminal counts related to his sexual abuse of his minor niece. *See id.* at ¶¶ 7-8. On December 16, 2009, pursuant to a Plea Agreement, Castillo pleaded guilty in the Circuit Court for Montgomery County to the fourth count, Sexual Offense in the Third Degree (touching his minor niece's breasts with his hands), in violation of Md. Code Ann., Crim. Law § 3-301, for conduct occurring at some point between January 1, 1999 and December 1, 2006,[3] during which time his niece was between the ages of six and thirteen years old. *Id.* at ¶ 9 (citing Indictment and Plea Hearing in *State of Maryland v. Elfido Castillo*, No. 113420-C). Castillo was sentenced to thirty-six months incarceration, eighteen of which were suspended, and four years supervised probation. *Id.* at ¶ 11.

On March 25, 2009, before his arrest for the aforementioned criminal conduct, Castillo signed his N-400 Application for Naturalization under penalty of perjury. Compl., Ex. E, at 10. In his naturalization application, Castillo checked the box marked "No" in response to part 10, question 15, which asked the following: "Have you **ever** committed a crime or offense for which you were **not** arrested?"  *Id.* at 8. Defendant also checked "no" when asked, "[h]ave you **ever** given false or misleading information to any U.S. Government official while applying for any immigration benefit or to prevent deportation, exclusion or removal?" *Id.*

On September 15, 2009, three months after Castillo was arrested for his sexual abuse of his minor niece, he was interviewed by a USCIS officer to determine his eligibility for naturalization. Answer ¶ 15, ECF No. 11. The parties dispute whether Castillo was placed under oath and whether he was asked questions and testified material information regarding his previous

---

[3]       Plaintiff contends that Castillo admitted that he sexually assaulted his niece "on multiple occasions" Compl. ¶ 10, but the Defendant contends that he only admitted to having done on one occasion, Def.'s Resp. 4.

crimes and arrests during the interview. Pl.'s Mot. 4, ECF No. 23; Def.'s Resp. 4-5, ECF No. 24. The government contends that Castillo was placed under oath and when asked about question 15 and 16 of part 10, he testified that he was previously arrested and charged in 1995 for driving while intoxicated but had never committed a crime or offense for which he had not been arrested. Compl. ¶¶ 15-20. The government further alleges that Castillo amended his answer to detail his time in jail related to driving while intoxicated in response to question 21, and when asked about question 23, he testified that he had never given false or misleading information to any U.S. Government official while applying for any immigration benefit. *Id.* at 21-24. To the contrary, Castillo claims that, during the interview on September 15, 2009, he was not asked, and thus he did not testify, that he had never committed a crime or offense for which he was not arrested. Def.'s Resp. 4-5; Answer ¶¶ 17, 18. He denied having testified about whether he had or had not been arrested. Def.'s Resp. 5; Answer ¶¶ 19, 20. Castillo further asserts that he was not asked if he had ever provided false or misleading information while applying for an immigration benefit. Answer ¶¶ 23, 24. While admitting that he had signed his application under penalty of perjury at the conclusion of the interview, Castillo claimed it was not clear to what the signature attested. *Id.* ¶ 25.

The government contends that Castillo was interviewed for a second time by a USCIS officer on October 22, 2009 to determine his eligibility for naturalization and signed his Form N-400 under the penalty of perjury, for a third time, before his application was approved on the same date. Compl. ¶¶ 31-32. The government alleges that, during the interview, Castillo was asked whether he had ever been charged with committing any crime or offense, and he amended his answer to include a 1983 citation for using a false identification card but then testified that he had no other arrest to report. *Id.* at ¶¶ 27-30. In contrast, Castillo denied he was interviewed a second time. Def.'s Resp. 5; Answer ¶¶ 27-31. Castillo then took the oath of allegiance, was admitted as

a citizen of the United States, and was issued Certificate of Naturalization No. 32866383 on October 27, 2009. Answer ¶¶ 32-33.

On December 16, 2009, Castillo pled guilty to one count of third-degree sexual offense, Count 4 of the indictment, for "the first time." *See* Answer, ¶¶ 9-10 (admitting Compl. ¶¶ 9-10 for a single incident); *see also* Plea Hr'g Tr. 19-20, Dec. 16, 2009, Compl. Ex. C, at 19-20. As noted, on April 15, 2010, Castillo was sentenced to 18 months incarceration with 18 additional months suspended, and four years supervised probation. Compl. ¶ 11; Answer ¶ 11.

In December 2019, the United States filed the present denaturalization action against Castillo. The government's complaint to revoke naturalization contains four counts:

1. Illegal procurement of naturalization: lack of good moral character (third-degree sexual offense during the statutory good moral character period);

2. Illegal procurement of naturalization: lack of good moral character (unlawful act adversely reflecting on moral character during naturalization application process);

3. Illegal procurement of naturalization: lack of good moral character (false testimony);

4. Procurement of naturalization by concealment of a material fact or willful misrepresentation.

Compl. 9-17. In July 2020, the United States moved for judgment on the pleadings on Count 2 of the Complaint, arguing that Castillo committed crimes of perjury, in violation of 18 U.S.C. § 1621(1); false swearing in an immigration matter, in violation of 18 U.S.C. § 1546(a); and making false statements, in violation of 18 U.S.C. § 1001(a). Pl.'s Mot. 2; Compl. ¶ 62. Plaintiff asserted that, because Castillo committed unlawful activity that adversely reflected on his moral character during the statutory period and he cannot demonstrate extenuating circumstances, he was barred under 8 U.S.C. § 1101(f) and 8 C.F.R. § 316.10(b)(3)(iii) from showing that he had the good moral

character necessary to become a naturalized U.S. citizen, and thus his procurement of naturalization was illegal and must be revoked under 8 U.S.C. § 1451(a). Compl. ¶¶ 64-65.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings once "the pleadings are closed – but early enough not to delay trial." Fed. R. Civ. P. 12(c). Courts apply the same standard that is applied to Rule 12(b)(6) motions to Rule 12(c) motions for judgment on the pleadings. *See, e.g.*, *Burbach Broadcasting Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999) (applying Rule 12(b)(6) standard of review to a Rule 12(c) motion).

When reviewing a motion for judgment on the pleadings, this Court "may consider documents attached to the complaint, as well as documents attached to the motion ..., if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see also CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). In this motion for judgment on the pleadings, this Court considers the Complaint, the Answer, Plaintiff's motion, Defendant's response, Plaintiff's reply, and any written instruments attached as exhibits. Consideration of documents that a plaintiff references and relies upon does not convert a motion to dismiss into a motion for summary judgment. *See Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

A motion for judgment on the pleadings pursuant to Rule 12(c), similar to a Rule 12(b)(6) dismissal motion, "should not be granted unless it appears to a certainty that the non-moving party cannot prove any set of facts in support of its claim that would entitle it to relief." *Shooting Point,*

*L.L.C. v. Cumming*, 238 F. Supp. 2d 729, 735 (E.D. Va. 2002), *aff'd*, 368 F.3d 379 (4th Cir. 2004); *Labram v. Havel,* 43 F.3d 918, 920 (4th Cir.1995). Although Rule 12(c) and 12(b)(6) motions are most often filed by defendants, the present motion is filed by the Plaintiff. In this instance, Defendant receives the benefits due the non-moving party, and I must "assume all well-pled facts to be true and draw all reasonable inferences in favor of" Castillo as the Defendant. *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 702 (4th Cir. 2016) (citing *Cooksey v. Futrell*, 721 F. 3d 226, 234 (4th Cir. 2013)).

## ANALYSIS

An individual who wishes to acquire United States citizenship through naturalization must meet a long list of criteria. *See* 8 U.S.C. § 1421 *et seq.* To qualify for naturalization, an individual must wait at least five years after establishing permanent residency, pass a citizenship test, truthfully answer questions posed by United States Citizenship and Immigration Services ("USCIS"), be a person of good moral character, and swear allegiance to the Constitution. *See* 8 U.S.C. § 1427. An individual who has obtained U.S. citizenship through naturalization and not birth can still lose his or her citizenship through denaturalization or revocation of naturalization under the Immigration and Nationality Act ("INA" or the "Act"). 8 U.S.C. § 1451. The Government can institute proceedings in federal district court for the purposes of revoking and setting aside the order of citizenship and canceling the certificate of naturalization. 8 U.S.C. § 1451(a). The Act provides that a federal district court can revoke an individual's naturalization if it was (a) illegally procured, or (b) procured by concealment of a material fact or willful misrepresentation. *See id.*

Although not absolute, the right of citizenship conferred by naturalization is a precious one. *Costello v. United States*, 365 U.S. 265, 269 (1961); *see also Schneiderman v. United States*,

320 U.S. 118, 122 (1943) (explaining that "[i]t would be difficult to exaggerate" the value and importance of the right of citizenship). The Supreme Court repeatedly has recognized that "severe consequences may attend" the loss of citizenship and that those consequences are especially dire for those who have lived and worked in the United States as citizens for many years. *See Costello*, 365 U.S. at 269; *Fedorenko v. United States*, 449 U.S. 490, 505 (1981); *Chaunt v. United States*, 364 U.S. 350, 353 (1960); *Schneiderman*, 320 U.S. at 122; *see also Knauer v. United States*, 328 U.S. 654, 659 (1946) ("[D]enaturalization, like deportation, may result in the loss of all that makes life worth living.") (internal quotation marks and citation omitted).

Given the importance of the right of citizenship—and the potentially devastating toll that loss of that citizenship is likely to take on a naturalized citizen and his or her family—it is little wonder that the Supreme Court has held that "such a right once conferred should not be taken away without the clearest sort of justification and proof." *Schneiderman*, 320 U.S. at 122. Accordingly, the government carries a heavy burden of proof when attempting to divest a naturalized citizen of citizenship after it has been granted: denaturalization is warranted only if the evidence is "clear, unequivocal, and convincing," such that it does not "leave the issue in doubt." *Costello*, 365 U.S. at 269 (internal quotation marks and citations omitted).

Plaintiff alleges that Castillo procured his citizenship illegally because he was not statutorily eligible for citizenship during the application process. Citizenship is illegally procured if "the congressionally imposed prerequisites to the acquisition of citizenship," including the good moral character requirement, are not met when naturalization is granted. *See Kungys v. United States*, 485 U.S. 759, 759 (1988); *Fedorenko*, 449 U.S. at 506. Under the INA, an applicant seeking naturalization must show that he or she was a person of good moral character for the five-year statutory period before filing a naturalization application, and until the time he or she became a

naturalized U.S. citizen. 8 U.S.C. § 1427(a)(3); 8 C.F.R. § 316.10(a)(1). It is undisputed that the relevant statutory period during which Castillo was required to demonstrate good moral character ran from March 30, 2004 (five years before he filed his naturalization application), through October 27, 2009 (the date he naturalized). Def.'s Resp. 3; Answer ¶ 59.

The INA does not define "good moral character," but the regulations provide that claims of good moral character should be evaluated on a case-by-case basis. *See* 8 C.F.R. § 316.10(a)(2). There are a number of ways an applicant can be precluded from establishing good moral character. §§ 8 U.S.C. 1101(f)(1)-(9). For example, an individual lacks good moral character if he or she has been convicted of committing acts constituting an aggravated felony or a crime involving moral turpitude. *See* 8 U.S.C. § 1101(f); 8 C.F.R; § 316.10(b)(2). In addition, the government can revoke an individual's citizenship if he or she "[has] committed unlawful acts that adversely reflect upon the applicant's moral character," unless the applicant can establish extenuating circumstances. 8 C.F.R. § 316.10(b)(3)(iii).

Because this is a Rule 12(c) motion for judgment on the pleadings, I must "assume all well-pled facts to be true and draw all reasonable inferences in favor of" the non-moving party, which in this case, is the Defendant. *Belmora*, 819 F.3d at 702. Accepting as true (for the purpose of this motion) Castillo's assertion that his criminal conduct occurred on only one occasion between January 1, 1999 and March 29, 2004, prior to the commencement of his statutory good moral character period, I need not consider whether his sexual abuse offense was a crime of moral turpitude or an unlawful act that adversely reflects upon his moral character for the purpose of denaturalization. *See* Def's Resp. 3. Regardless of the nature of his sexual offense, it was presumably outside of Castillo's statutory good moral character period when viewing the facts and inferences in the light most favorable to him. Pl.'s Mot. 10 ("In light of [the Rule 12(c) motion] . . .

Defendant's admitted and pled-to criminal act transpired *before* [his application]"). Thus, for the purpose of the Rule 12(c) motion, I am only concerned with whether the pleadings have established by clear, unequivocal, and convincing evidence that (A) Castillo committed crimes of (i) perjury, in violation of 18 U.S.C. § 1621(1), (ii) false swearing in an immigration matter, in violation of 18 U.S.C. § 1546(a), and (iii) making false statements, in violation of 18 U.S.C. § 1001(a), and (B) there were no extenuating circumstances that would mitigate the severity of Castillo's unlawful acts that would otherwise adversely reflect on his moral character.

### A.    Crimes Adversely Reflecting on Defendant's Moral Character

The United States alleged that Castillo was statutorily disqualified from naturalization because he committed unlawful activities that adversely reflected on his moral character under 8 C.F.R. § 316.10(b)(3)(iii) on three independent grounds: (i) perjury, in violation of 18 U.S.C. § 1621(1), (ii) false swearing in an immigration matter, in violation of 18 U.S.C. § 1546(a), and (iii) making false statements, in violation of 18 U.S.C. § 1001(a).

### i.    Perjury, in Violation of 18 U.S.C. § 1621(1)

In order to establish that Castillo committed the crime of perjury during his naturalization process, in violation of 18 U.S.C. § 1621(1), the government must allege and prove that "having taken an oath before a competent tribunal [or] officer . . . that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, [he] willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true." 18 U.S.C. § 1621(1). Distilled to its elements, the government must show that Castillo "1) **willfully** 2) made a false statement 3) **under oath** 4) before a tribunal or officer 5) about a **material** matter." *United States v. Jabateh*, 974 F.3d 281, 300 (3d Cir. 2020) (emphasis added); *see also United States v. Dunnigan*, 507 U.S. 87, 94 (1993).

Among the five aforementioned elements required for a finding of perjury, the parties disagree on three issues: 1) willfulness, 3) whether the Defendant's statements were under oath, and 5) about a material matter. The element of "willfulness" is satisfied if the misrepresentation was "made deliberately and voluntarily." *United States v. Salem*, No. 19-CV-2729, 2020 WL 6273478, at \*11 (N.D. Ill. Oct. 26, 2020) (citing *Asentic v. Sessions*, 873 F.3d 974, 981 (7th Cir. 2017)); *Toribio-Chavez v. Holder*, 611 F.3d 57, 63 (1st Cir. 2010) (quoting *Mwongera v. I.N.S.*, 187 F.3d 323, 330 (3d Cir. 1999) and citing *Parlak v. Holder*, 578 F.3d 457, 463–64 (6th Cir. 2009)). "An intent to deceive is not necessary; rather, knowledge of the falsity is sufficient." *Toribio-Chavez*, 611 F.3d at 63 (citing *Forbes v. I.N.S.*, 48 F.3d 439, 442 (9th Cir. 1995)); *see Wen Zhong Li v. Lynch*, 837 F.3d 127, 131 (1st Cir. 2016).

In his naturalization application in March 2009, Castillo checked the boxes marked "No" in response to questions that asked the following: "Have you **ever** committed a crime or offense for which you were **not** arrested?" and "[h]ave you **ever** given false or misleading information to any U.S. Government official while applying for any immigration benefit or to prevent deportation, exclusion or removal?" Compl., Ex. E, at 8. The government contends that because Castillo knew that he had sexually abused his minor niece for which he had not been arrested then, and yet he concealed this material matter in his naturalization application, which he signed under penalty of perjury, his answer was willfully misleading. Pl.'s Reply 3-4. While it may be implausible to a reasonable person that a man in his 30s could honestly believe that his sexual abuse of his minor niece was lawful, Castillo denies the allegations of perjury in his naturalization application and argues that "it remains plausible that Defendant believed his actions fell into this category [of morally reprehensible without being illegal.]" Answer ¶ 61; Def.'s Resp. 7. Because, at this procedural juncture, I am required to view the inferences in the light most favorable to the non-

movant in this Rule 12(c) motion, I cannot say that the government, by the pleadings, has proffered clear, unequivocal, and convincing evidence demonstrating that Castillo was aware of the falsity of his statement or deliberately made the false statement when he filed the application. This is because Castillo has pleaded (quite strategically) that his criminal misconduct occurred on only a single instance (while the Plaintiff contends that it was a course of conduct), from which he seems to argue that while he may have suspected that touching the breasts of his minor niece on a single occasion was immoral, he did not think it was illegal during his application process.

Castillo conceded that he was "disabused of any such notion" that touching his minor niece's breasts was legal conduct after his arrests in June 2009. *Id.* at 3. The government contends that he signed his naturalization application under penalty of perjury twice *after* his June 2009 arrest: in September 2009 and in October 2009, without disclosing his conduct and arrest related to his criminal offense, and thus at least these two occasions constitute perjuries. *Id.* The government submitted the affidavit of good cause by Immigration and Customs Enforcement Special Agent Oaks, but it has not provided any affidavit from any officer who actually interviewed Castillo, and Castillo denies being placed under oath, being asked, or having testified to questions relevant to Count 2 of the Complaint during the interview on September 15, 2009. *See* Compl., Ex. A; Answer ¶¶ 16-24; Def.'s Resp. 4-5. Castillo further denies that he was interviewed for a second time on October 22, 2009. Answer ¶¶ 27-31; Def.'s Resp. 5. Therefore, constrained as I am by the restrictive nature of the procedural motion that the government has chosen to file, I must at this point in the case conclude that it has not established by clear, unequivocal, and convincing evidence that there was no genuine dispute of material fact surrounding the two interviews, particularly concerning whether Castillo was placed under oath and whether he was asked questions and testified material information regarding his previous crimes and arrests.

The government also asserts that Castillo was placed under oath, and when asked about question 15 and 16 of part 10, he testified that he was previously arrested and charged in 1995 for driving while intoxicated but had never committed a crime or offense for which he had not been arrested. Compl. ¶¶ 15-20. The government further asserts that Castillo amended his answer to detail his time in jail related to driving while intoxicated in response to question 21, and when asked about question 23, Castillo testified that he had never given false or misleading information to any U.S. Government official while applying for any immigration benefit. *Id.* at 21-24. However, Castillo claims that, during the interview on September 15, 2009, he was not asked, and thus he did not testify that he had never committed a crime or offense for which he was not arrested. Answer ¶¶ 16-18; Def.'s Resp. 4-5. He denied having testified about being arrested. Answer ¶ 20. Castillo further asserts that he was not asked if he had ever provided false or misleading information while applying for an immigration benefit. Answer ¶¶ 23, 24; Def.'s Resp. 5. While admitting that he had signed his application under penalty of perjury at the conclusion of the interview, Castillo asserts it was not clear to what the signature attested. Answer ¶ 25; Def.'s Resp. 5.

The government further asserts that Castillo was interviewed for a second time on October 22, 2009 to determine his eligibility for naturalization, and he signed his Form N-400 under the penalty of perjury, for a third time, before his application was approved on the same date. Compl. ¶¶ 31-32. The government claims that, during the interview, Castillo was asked whether he had ever been charged with committing any crime or offense, and he amended his answer to include a 1983 citation for using a false identification card but then testified that he had no other arrest to report. *Id.* at ¶¶ 27-30. Again, Castillo denied that he was interviewed a second time. Answer ¶¶ 27-31; Def.'s Resp. 5.

I have examined the exhibits attached to the Complaint, including Castillo's application form. Compl., Ex. E. Undeniably, his Form N-400 shows that two officers signed, on September 15, 2009 and on October 22, 2009 respectively, and the officers' handwriting in red corroborates the alleged amendments during the interviews regarding the details of his time in jail related to driving while intoxicated as well as a 1983 citation for using a false identification. *Id.* at 8, 10. However, Castillo's signatures were undated, and I do not know what was asked and answered during the interview or interviews in the form of, for instance, testimony from the USCIS officer or officers who interviewed Castillo. When viewing the facts and inferences in the light most favorable to the non-movant, there could be a genuine factual dispute regarding whether Castillo was placed under oath or whether he willfully made false statements if he was placed under oath. The Court therefore concludes that the government has not yet marshaled sufficient evidence that clearly, unequivocally, and convincingly establishes the willful state of mind necessary for a finding of perjury during the required period of good moral character.

The parties also disagree about whether Castillo's false representation was material. The materiality of Castillo's false representation regarding his criminal sexual acts against his minor niece and arrest history is a question of law. *Kungys,* 485 U.S. at 772 (1988). The Supreme Court has held that a "material" misrepresentation is one that was predictably capable of affecting the decision-making process, i.e., had the natural tendency to affect the official decision of the agency. *Id.* ("[W]e believe it is proper to treat the issue of materiality as a legal question."); *United States v. Stelmokas*, 100 F.3d 302, 317 (3d Cir. 1996) ("Inasmuch as under *Kungys* the materiality of a misrepresentation in a denaturalization proceeding is a matter of law, not fact, there cannot possibly be a need for the government to produce evidence from officials that if the truth had been told the officers would have reached a different result.").

I fully agree with the government that information regarding criminal conduct is material because it would have had the natural tendency to influence USCIS in its decision whether to approve Castillo's application. As the Supreme Court has noted, sexual abuse of a child "is a most serious crime and an act repugnant to the moral instincts of a decent people." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002); *accord United States v. Shannon*, 110 F.3d 382, 389 (7th Cir. 1997) (*en banc*) ("[Sex offenses] that involve incest or prepubescent children (pedophilia) . . . are crimes of peculiar horror in our society."). Indeed, "[s]exual abuse against a minor constitutes a crime of moral turpitude because of its inherently vile and depraved nature." *United States v. Gayle*, 996 F. Supp. 2d 42, 51 (D. Conn. 2014). There is no question that Castillo's alleged concealment of his sexual abuse against his minor niece was material.

While having satisfied the materiality requirement, the government has not met its heavy burden to prove clearly, unequivocally, and convincingly that Castillo willfully made false statements when placed under oath, given the very restrictive nature of the procedural posture of a Rule 12(c) motion. Therefore, I will not grant judgment on the pleadings with regards to perjury.

### ii. False Swearing in an Immigration Matter, in Violation of 18 U.S.C. § 1546(a)

In order to prove a charge of immigration fraud, in violation of 18 U.S.C. § 1546(a), the government must establish each of the following elements: "(1) that defendants made a false statement in an immigration document, (2) that the false statement was made **knowingly**, (3) that the false statement was **material** to INS activities or decisions, (4) that the false statement was made **under oath**, and (5) that the false statement was made in an application required by the immigration laws or regulations of the United States." *United States v. O'Connor*, 158 F. Supp. 2d 697, 720 (E.D. Va. 2001); 18 U.S.C. § 1546(a); *United States v. Chu*, 5 F.3d 1244, 1247 (9th Cir. 1993) (emphasis added). To establish that a defendant made a false statement "knowingly" in

an immigration matter, the government needs to show that "the defendant is aware of the act and did not act through ignorance, mistake or accident." *United States v. Samuels*, 874 F.3d 1032, 1035 (8th Cir. 2017) (citing *United States v. Dockter*, 58 F.3d 1284, 1288 (8th Cir. 1995)). The "knowingly" standard, which requires a defendant to act with the awareness of making a false statement, thus, is essentially treated the same as the "willfully" standard for which a "knowledge of the falsity" would suffice. *Toribio-Chavez*, 611 F.3d at 63.

Similar to the analysis under the perjury charge in violation of 18 U.S.C. § 1621(1), I find that Castillo's false statements were material. Nevertheless, pursuant to the standards governing Rule 12(c) motions, and Castillo's denial of essential facts the government must show to prevail at this point in the case, the government has failed to establish by clear, unequivocal, and convincing evidence that Castillo's false statements were made knowingly and under oath. Therefore, I will not grant judgment on the pleadings with regards to false swearing in an immigration matter.

### iii.    Making False Statements, in Violation of 18 U.S.C. § 1001(a)

To establish that Castillo made false statements, in violation of 18 U.S.C. § 1001(a), the government must prove that he "**knowingly and willfully**— (1) falsifie[d], conceal[ed], or cover[ed] up by any trick, scheme, or device a **material** fact; (2) ma[de] any **materially** false, fictitious, or fraudulent statement or representation; or (3) ma[de] or use[d] any false writing or document knowing the same to contain any **materially** false, fictitious, or fraudulent statement or entry…."(emphasis added).

Analogous to the perjury and immigration fraud charges, the charge of making false statements in violation of 18 U.S.C. § 1001(a) again requires the *mens rea* element—knowingly and willfully—that, on the disputed record before me, and drawing the inferences in Castillo's

favor as I must in resolving a Rule 12(c) motion, the government has not clearly, unequivocally, and convincingly established.

Because the pleadings do not clearly, unequivocally, and convincingly establish the absence of genuine issues of material facts, the government has not proven that it is clearly entitled to judgment as a matter of law that Castillo would have been ineligible for naturalization due to unlawful acts adversely reflecting on his moral character.

### B.    Extenuating Circumstances

An individual who commits "unlawful acts that adversely reflect upon [his or her] moral character" during the statutory period shall be found to lack good moral character unless he or she establishes "extenuating circumstances." 8 C.F.R. § 316.10(b)(3)(iii). The government argues that there are no extenuating circumstances that would mitigate the severity of Castillo's unlawful acts that would otherwise adversely reflect on his moral character, so that he "shall be found to lack good moral character," rendering his naturalization illegally procured. *Id.*; Pl.'s Mot. 12-13. Generally, it would be Defendant's burden to establish such extenuating circumstances, not the government's obligation to rebut them. *See United States v. Okeke*, 671 F. Supp. 2d 744, 751 (D. Md. 2009) (finding no such extenuating circumstances existed in a Summary Judgment when Defendant did not attempt to raise or explain any extenuating circumstances during his naturalization process). But in a Rule 12(c) motion, the burden nonetheless falls on the movant to show that the pleadings establish by clear, unequivocal, and convincing evidence that there were no extenuating circumstances that would mitigate the severity of Castillo's unlawful acts. *See Valenzuela*, 2018 WL 3619503, at *8 (holding that the government was not entitled to judgment on the pleadings because the pleadings do not clearly, unequivocally, and convincingly establish the absence of extenuating circumstances).

17

Castillo has raised several explanations to potentially qualify as the extenuating circumstances that would mitigate the culpability of making materially false statements to immigration officials in his naturalization application process. Def's Resp. 10. The defense argues that, first, upon Castillo's filing of his naturalization application in March 2009, his answer to question 15, that he had not committed a crime for which he had not been arrested, was given under the mistaken impression that he had not committed a crime. *Id.* Second, during the follow-up interview for his naturalization application, Castillo was not asked about arrests or charges during the interview. *Id.*; Answer ¶¶ 16-24 (denying Compl. ¶¶ 16-24). Third, even if he was asked any questions about arrests or charges, Castillo misunderstood the questions because they were not asked in the same way as written in the Form N-400. Def's Resp. 10. Lastly, Castillo states that he believed that signing his application at the conclusion of his interview attested again that the application was true when it was filed. *Id.* While, at subsequent stages of this litigation, Castillo may have a hard time meeting his obligation to demonstrate these assertedly extenuating circumstances, at this point in the proceedings he has pleaded them, and the government has not submitted clear, unequivocal, and convincing evidence to prove their absence.

Thus, for the purpose of this Rule 12(c) motion, when viewing the facts and inferences in the light most favorable to the non-moving party, I must conclude that the government has not met its burden to obtain judgment on the pleadings. Because the pleadings do not clearly, unequivocally, and convincingly establish the absence of genuine issues of material facts, the government has not proven that it is clearly entitled to judgment as a matter of law that Castillo would have been ineligible for naturalization due to unlawful acts adversely reflecting on his moral character. Even if the Court finds no genuine dispute of material facts and Castillo, under penalty of perjury, knowingly and willingly subscribed false statements of a material matter as true, the

government still fails to prove the absence of extenuating circumstances by clear, unequivocal, and convincing evidence. Accordingly, the Court will DENY Plaintiff's motion for judgment on the pleadings with respect to Count 2 of the Complaint.

## ORDER

For the reasons stated in this Memorandum Opinion and Order, it is this 3rd day of March 2021, hereby ORDERED that the United States of America's Motion for Judgment on the Pleadings pursuant to 8 U.S.C. § 1451(a) (ECF No. 23) is DENIED.  The parties shall confer and provide a joint proposed revised scheduling order for my approval on or before March 15, 2021.[4]


_____/S/_____
Paul W. Grimm
United States District Judge

---

[4]      The proposed order shall include a chart with columns showing both the existing dates and proposed new dates.